CENTRAL BANK FOR SAVINGS *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF CROMWELL (5522)

BORDEN, BIELUCH and O'CONNELL, Js.

Argued November 12, 1987—decision released February 16, 1988

*Richard W. Tomc,* for the appellant (defendant).

*Thomas P. Byrne,* for the appellee (plaintiff).

BIELUCH, J. The defendant planning and zoning commission of the town of Cromwell (commission) appeals from the judgment of the trial court sustaining the appeal of the plaintiff Central Bank for Savings (bank) from a decision of the commission changing the zone classification of a fifty-four acre parcel of undeveloped land owned by the bank. The land was changed from a Planned Residential Development District 2 (PRD-2) zone, permitting multi-family development at a density of six units per acre, to a Residence District A-25 zone, authorizing only single-family dwellings on a minimum lot area of 25,000 square feet.

The commission claims that the trial court erred (1) in holding that under General Statutes § 8-3 a change in conditions is required before the commission can make a zone change, (2) in determining that the personal knowledge and observations of the members of the commission were not proper bases to support the commis-

sion's findings and decision, (3) in stating that members of the commission were not competent to determine whether a high density planned residential development would have an adverse effect on local traffic conditions, and whether there was a local demand for the housing allowed by a planned residential development, (4) in determining that the rural character of the area was not a pertinent factor for the commission to consider under General Statutes § 8-2 when it made the zone change, (5) in finding that the commission was motivated to benefit a group of residents, and not the community at large, when it rezoned the plaintiff's property, (6) in finding that there was insufficient evidence on the record to support the commission's findings and decision, and (7) in holding that the commission had acted arbitrarily, in abuse of its discretion, and illegally when it changed the zoning classification of the plaintiff's land from high density residential to low density residential in conformity with the town plan of development. We find error.

The following undisputed facts are relevant to this appeal. On May 12, 1980, the plaintiff bank acquired title to the parcel of land which is the subject of this appeal. The parcel is bisected by and abuts Interstate Route 91 on the east and west sides of the highway. The easterly portion contains thirty-four acres; the westerly portion contains twenty acres. At the time the bank obtained the land, its zoning classification was Planned Residential Development District 3 (PRD-3), which would have permitted the bank to develop its property then for multi-family residences at a density of ten units per acre.[1] By an amendment to the town's zoning regulations on November 17, 1981, the PRD-3

[1] Before May 30, 1972, this land was zoned as Residence District A-25. This designation allowed single-family dwellings on a minimum lot area of 25,000 square feet. Pursuant to a request by the bank's predecessor in title, the Commission downgraded the land to a PRD-3 zone on May 30, 1972.

zone was eliminated, and all parcels then under that classification were upgraded to a PRD-2 zone, which allowed development at a density of six units per acre.

On September 11, 1984, the commission, pursuant to written requests by area residents, conducted a public hearing for the purpose of determining whether to reclassify the zone of the bank's property to Residence District A-25, a designation which would permit single-family dwellings only on lots containing at least 25,000 square feet in area. The commission heard testimony from various town officials, including the town's planner, and area residents, as well as from the plaintiff's panel of experts. The commission also received in written form a statement of support from the bank, and several technical reports from the bank's experts. Subsequent to the public hearing, an alternate member of the commission sitting on this zoning panel filed a written report of his "observations and positions with respect to this proposed zoning action" for the consideration of the commission.

The commission thereafter unanimously approved the zone change at its meeting of October 16, 1984. The minutes of that meeting reveal that the commission reached its decision to upgrade the zoning classification after considering all the evidence presented at the public hearing, as well as the health, safety and general welfare of the area and the town's plan of development. The minutes also summarize the personal views of approval expressed by each member of the commission concerning the proposed zone change, and that the commission unanimously voted to approve the change of zone "for all the reasons elaborated on by the members of this Commission."[2]

---

[2] Some of the considerations for the commission's acceptance of the proposed zone change were (1) the area's high population, (2) the significant number of existing condominiums in Cromwell, (3) the area's heavy traffic flow, (4) the area's narrow roads, (5) preservation of the area's "rural

The bank appealed from the commission's decision to the trial court, which sustained its appeal. That court, after determining that the bank had standing to appeal, held that the commission had acted arbitrarily, in abuse of its discretion, and illegally when it rezoned the bank's property. Upon certification, the commission took this appeal.

I

The defendant claims that the trial court erred in holding that under General Statutes § 8-3 a change in conditions is required before a zoning change can be made. We agree.

The trial court held that "a change of zone classification is unwarranted 'unless new conditions arise which substantially alter the character of an area.' *Morningside Assn.* v. *Planning & Zoning Board,* 162 Conn. 154, 157, [292 A.2d 893 (1972)]." The court concluded, therefore, that the action of the commission was arbitrary because its record was "barren of any change in conditions that affected the surrounding area since the original action of the commission . . . and the decision did not involve the resolution of questions which it had previously decided."

The trial court misconstrued the case cited for its ruling. Its quotation from *Morningside Assn.* v. *Planning & Zoning Board,* supra, is incomplete and taken out of context. The complete holding in *Morningside* is as follows: "*Ordinarily,* unless new conditions arise which substantially alter the character of an area, a change in zone classification is unwarranted. . . . A local zoning authority, however, acts in a legislative capacity when it enacts or amends its regulations. . . . In act-

charm," (6) the safety of the neighborhood, (7) the best interests of area residents, and (8) conformity with the town's plan of development, which encouraged a slow rate of growth.

ing, such a legislative body must be relatively free to amend or modify its regulations whenever time and experience have demonstrated the need for a revision. . . . The board, acting in a legislative capacity, was, therefore, not bound by the *general rule* which would prohibit it from reversing an earlier decision without evidence of a change in conditions." (Citations omitted; emphasis added.) Id., 157–58.

The trial court's ruling is contrary to the repeated decisions of our Supreme Court and this court holding that "[i]n adopting or amending zoning regulations, the commission acts in a legislative capacity. *Parks* v. *Planning & Zoning Commission,* 178 Conn. 657, 660, 425 A.2d 100 (1979); *A. P. & W. Holding Corporation* v. *Planning & Zoning Board,* 167 Conn. 182, 184, 355 A.2d 91 (1974). 'Acting in such legislative capacity, the local board is free to amend its regulations "whenever time, experience, and responsible planning for contemporary or future conditions reasonably indicate the need for a change. . . . The discretion of a legislative body, because of its constituted role as formulator of public policy, is much broader than that of an administrative board, which serves a quasi-judicial function." *Malafronte* v. *Planning & Zoning Board,* [155 Conn. 205, 209, 230 A.2d 606 (1967)].' *Parks* v. *Planning & Zoning Commission,* supra." *Arnold Bernhard & Co.* v. *Planning & Zoning Commission,* 194 Conn. 152, 164, 479 A.2d 801 (1984); *Wisniewski* v. *Zoning Board,* 6 Conn. App. 666, 667, 506 A.2d 1092 (1986). "The present appeal, involving a decision upon an application for a change of zone, required the trial court to review a decision made by the commission in its legislative capacity. . . . Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the agency. The question

is not whether the trial court would have reached the same conclusion but whether the record before the agency supports the decision reached." *Burnham* v. *Planning & Zoning Commission,* 189 Conn. 261, 265, 455 A.2d 339 (1983). The trial court erred, therefore, in holding that the action of the commission was arbitrary as it was not predicated upon a finding of a change in the conditions of the area surrounding the property to be rezoned.

## II

The next four issues raised by the commission concern the trial court's conclusions as to the validity of several of the factors considered by the commission in reaching its decision and will, therefore, be discussed as four parts of one issue. The first of these issues is the contention of the commission that the trial court erroneously determined that the personal knowledge and observations of the commission members were not proper bases upon which to support the decision of the commission. The trial court's conclusion was in error.

"[T]he members of the [agency] are entitled to take into consideration whatever knowledge they acquire by personal observation. *Dubiel* v. *Zoning Board of Appeals,* 147 Conn. 517, 522, 162 A.2d 711 (1960)." *Burnham* v. *Planning & Zoning Commission,* supra, 267; *DeMars* v. *Zoning Commission,* 142 Conn. 580, 584, 115 A.2d 653 (1955); see also *Jennings* v. *Connecticut Light & Power Co.,* 140 Conn. 650, 675, 103 A.2d 535 (1954) (members of administrative body entitled to consider facts which they have learned through personal observations, if properly made). The commission was, therefore, "entitled to regard the facts so learned by them to the same extent as though they were offered in evidence before them . . . ." *Mrowka* v. *Board of Zoning Appeals,* 134 Conn. 149, 154, 55 A.2d 909 (1947).

The trial court also erred in concluding that the members of the commission were not competent to determine whether a high density planned residential development would have an adverse effect on local traffic conditions, and whether there was a local demand for the housing permitted by such a development. General Statutes § 8-2 sets forth the various factors and designs a zoning authority must consider when it makes a zone change. Among these are: "to lessen congestion in the streets . . . to prevent the overcrowding of land . . . [and] to avoid undue concentration of population."[3] The trial court held that the determination of traffic congestion requires support from an expert, and that personal observations of commission members cannot be competent evidence to determine the future effect of traffic generation or the local real estate market.

The evidentiary value of the personal knowledge and observations of commission members has already been established. Reliance upon their knowledge concerning matters readily within the competence of lay members of a commission, such as local traffic congestion, street safety and real estate needs, is permitted. See *Feinson*

---

[3] General Statutes § 8-2 provides in relevant part: "Such regulations shall be made in accordance with a comprehensive plan and shall be designed to lessen congestion in the streets; to secure safety from fire, panic, flood and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population and to facilitate the adequate provision for transportation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration as to the character of the district and its peculiar suitability for particular uses and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality. Such regulations shall also encourage the development of housing opportunities for all citizens of the municipality consistent with soil types, terrain and infrastructure capacity. Zoning regulations may be made with reasonable consideration for the protection of historic factors and shall be made with reasonable consideration for the protection of existing and potential public surface and ground drinking water supplies."

v. *Conservation Commission,* 180 Conn. 421, 427, 429 A.2d 910 (1980). The *Feinson* case presented our Supreme Court with the question of when an administrative body must rely on outside expert opinion rather than the personal knowledge of its individual members. The court there found that local matters, such as traffic congestion and street safety, were within the competence of commission members, but "a lay commission acts without substantial evidence, and arbitrarily, when it relies on its own knowledge and experience concerning technically complex issues such as pollution control, in disregard of contrary expert testimony, without affording a timely opportunity for rebuttal of its point of view." Id., 429. The commission members here were correct in relying on their personal knowledge to determine the impact of a high density development on local traffic and total population, as well as the town's needs for multi-family housing, when deciding whether to zone upward the property in question. The trial court erred in concluding otherwise.

The trial court also erred in concluding that the rural character of the area under consideration was not a pertinent factor for the commission to consider under General Statutes § 8-2.[4] A zoning commission is "justified in considering . . . rural factors in making its decision on a requested zone change." *Burnham* v. *Planning & Zoning Commission,* supra, 265. That our rural areas merit preservation is also evident as a state policy in the enactment of Public Acts 1978, No. 78-232, now General Statutes §§ 22-26aa through 22-26ii, adopting a state program for the preservation of agricultural lands in rural areas from encroachment by residential and commercial developments.

Additionally, the trial court erred in finding that the commission was motivated to benefit a group of resi-

---

[4] See footnote 3, supra.

dents, and not the community at large, when it rezoned the property owned by the bank. The record of the October 16, 1984 meeting, at which the zone change was considered and approved, reveals that the individual members had reviewed the materials presented concerning the proposed zone change before giving their numerous valid reasons to support their action. Only one member of the commission, after stating other reasons for her support of the zone change, listed also "the desires expressed by the people." In fact, the reasons expressed were introduced by her conclusion "that a change to [Residence District] A-25 would be in the best interest of the people." The trial court in its memorandum of decision concluded as follows: "It is clear from [a] reading of the reasons of the commission that the commission members were considering only the wishes of the neighbors who appeared at the hearing . . . . [I]t is clear that the commission was motivated to benefit a group of residents, and not the community at large. The court finds this is not a proper motive."

We find that the trial court went behind the reasons given by the commission for the zoning change and inferred that it considered only the desires of the area residents who appeared at the September 11, 1984 public hearing. This was clearly erroneous. " '[W]here a zoning commission has formally stated the reasons for its decision the court should not go behind that official collective statement of the commission. It should not attempt to search out and speculate upon other reasons which might have influenced some or all of the members of the commission to reach the commission's final collective decision.' *DeMaria* v. *Planning & Zoning Commission,* 159 Conn. 534, 541, 271 A.2d 105 (1970)." *Allied Plywood, Inc.* v. *Planning & Zoning Commission,* 2 Conn. App. 506, 512, 480 A.2d 584, cert. denied, 194 Conn. 808, 483 A.2d 612 (1984).

## III

The defendant commission also maintains that the trial court erred in finding that there was insufficient evidence in the record to support the commission's findings and decision. We concur.

The decision of the commission must be sustained "if an examination of the record discloses evidence that supports any one of the reasons given. See *Daviau* v. *Planning Commission,* 174 Conn. 354, 358, 387 A.2d 562 (1978); *Nicoli* v. *Planning & Zoning Commission,* 171 Conn. 89, 94, 368 A.2d 24 (1976); *First Hartford Realty Corporation* v. *Plan & Zoning Commission,* 165 Conn. 533, 543, 338 A.2d 490 (1973); see *Parks* v. *Planning & Zoning Commission,* 178 Conn. 657, 662–63, 425 A.2d 100 (1979)." *Huck* v. *Inland Wetlands & Watercourses Agency,* 203 Conn. 525, 539–40, 525 A.2d 940 (1987).

There was ample evidence in the record to support the commission's decision. The trial court arrived at its conclusion of evidentiary insufficiency by improperly excluding from its consideration proper evidence, such as the personal knowledge of commission members, and giving no weight to other evidence, such as the rural character of the area encompassed by the zone change. This situation is similar to the one which confronted our Supreme Court in *Burnham* v. *Planning & Zoning Commission,* supra. The court there concluded that the trial court's improper exclusion of evidence explained its erroneous finding that the evidence was inadequate to support the commission's decision. The same conclusion is applicable here. The trial court erred in finding that there was insufficient evidence in the record to support the commission's decision.

## IV

Finally, we agree with the commission's assertion that the trial court erred in holding that the commission had acted arbitrarily, in abuse of its discretion and illegally when it changed the zoning classification of the bank's land. The commission's decision to restore the original residential zone of Residence District A-25 which applied before May 30, 1972, was made "in accordance with a comprehensive plan [of development]." General Statutes § 8-2;[5] see *Burnham* v. *Planning & Zoning Commission,* supra, 267. The commission's decision was not arbitrary, in abuse of its discretion or illegal.

"We have said on many occasions that courts cannot substitute their judgment for the wide and liberal discretion vested in local zoning authorities when they have acted within their prescribed legislative powers. Courts must not disturb the decision of a zoning commission unless the party aggrieved by that decision establishes that the commission acted arbitrarily or illegally. *First Hartford Realty Corporation* v. *Plan & Zoning Commission,* 165 Conn. 533, 540–41, 338 A.2d 490 (1973)." *Burnham* v. *Planning & Zoning Commission,* supra, 266.

It is evident from the record that the commission fully reviewed the nature and prior zoning classifications of the area involved in reaching its decision, and carefully considered the consequences of a decision that would continue to keep the area as a high density residential zone such as PRD-2. Even to the untrained eye a view of the zoning map shows the unchanged PRD-2 zone as a small blot in a large area designated as Residence District A-25 and extending from both sides of Inter-

---

[5] See footnote 3, supra.

state Route 91. The land use map incorporated in the plan of development designates the portion of the property on the west side of the highway for residential low density use for a single family dwelling on one acre of land. The land on the east side of the highway is shown as a preservation area and agricultural land. This is consistent with the development plan's goals and policies of providing (1) for a gradual increase of new housing units, (2) for a slow rate of residential growth, (3) for a balance between use of land and the conservation of natural resources and open spaces, and (4) for the protection of prime agricultural lands.

The commission was uniquely qualified to consider present factors and proposed zoning goals and policies. "The courts allow zoning authorities this discretion in determining the public need and the means of meeting it, because the local authority lives close to the circumstances and conditions which create the problem and shape the solution. *Stiles* v. *Town Council,* 159 Conn. 212, 219, 268 A.2d 395 (1970)." *Burnham* v. *Planning & Zoning Commission,* supra. The decision of the commission was neither arbitrary, in abuse of its discretion nor illegal. The trial court erred when it held otherwise.

There is error, the judgment of the trial court is set aside and the case is remanded with direction to dismiss the plaintiff's appeal.

In this opinion the other judges concurred.