[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a consolidated appeal, wherein August B. Rivezzi and Janice Rivezzi (hereinafter plaintiffs) appeal from the decisions of the North Branford Inland and Watercourses Agency (hereinafter defendant) denying their application in part to conduct regulated activities within the boundary of an inland wetland, specifically permission to perform slope stabilization CT Page 8956 activities and maintain a gravel driveway on their property in North Branford.
The activities which the plaintiff's sought permission to conduct had been completed without proper permits and authorization prior to certain cease and desist orders being issued to the plaintiffs.
The plaintiffs claim that the defendant did not base its decision on substantial evidence. The defendant claims that its decision is based on substantial evidence.
Before addressing the substantive issues presented by this consolidated appeal, the court finds that it has subject matter jurisdiction by virtue of Conn. Gen. Statutes 22a-43a which allows appeals by "any person aggrieved by any regulation, order, decision or action" of the agency may appeal to the Superior Court in accordance with the provisions of 4-183. The plaintiffs are the owners of the subject real estate and have a specific, personal and legal interest in the subject matter of the decision. Light Rigging Co. v. DPUC, 219 Conn. 168, 172, (1991). The plaintiffs' interest has been specially and injuriously affected by the decision of the defendant. State Medical Society v. Board of Examiners in Podiatry, 203 Conn. 295,300. (1987).
The scope of this court's review is defined by Conn. Gen. Statutes 4-183 which provides:
 "(j) The court shall not substitute its judgment for that of the agency as to the weight of the questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative and substantial CT Page 8957 evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. . . .
Under 4-183, the scope of judicial review of an agency's action is very limited. Connecticut Light and Power v. DPUC,219 Conn. 51, 57 (1991). The court is not to substitute its judgment for that of the agency, but is only to determine whether, in light of the evidence, the agency acted unreasonably, arbitrarily, or in abuse of its discretion. Id. 57-58. The trial court is required to search the record of the hearing and determine if an adequate basis for the agency's decision exists. Gagnon v. Inland Wetlands and Watercourses Commission, 213 Conn. 604, 609 (1990). The determination of issues of fact by the agency should be upheld if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. Miko v. Chro, 220 Conn. 192, 200,201. (1991).
Judicial Review of administrative conclusions of law is also limited as "conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from the facts." New Haven v. FOIC, 205 Conn. 767, 774 (1987). Where "one of the stated reasons is sufficient to support the action of the commission, then that action should be sustained by the court." Id. 778.
On appeal from an order or decision made pursuant to the Inland Wetlands and Watercourse Act, the court does not try the case de novo, but rather, examines the record to determine whether the ultimate findings are supported by "substantial evidence" East Haven Economic Development Commission v. D.E.P.,36 Conn. Sup. 1, 5, (1979). The "substantial evidence rule is similar to the `sufficiency of the evidence' standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords `a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . Huck v. Inland Wetlands and Watercourses Agency, 203 Conn. 525,541, (1987). Such a standard of review allows less room for judicial scrutiny than does the `weight of the evidence' rule or the `clearly erroneous' rule." Connecticut Light and Power v. DPUC, 216 Conn. 627, 640, (1990). The possibility of drawing CT Page 8958 two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Huck v. Inland Wetlands and Watercourse Agency, supra, 541-542. "Administrative conclusions are not unreasonably simply because the evidence admits of multiple, possible inconsistent conclusions." Connecticut Light and Power v. DPUC, supra 644. In conducting its review, a court must defer to the agency's assessment of the credibility of the witnesses, and to its right to believe or disbelieve any witness, even an expert, in whole or in part" Id., 640.
Generally, an administrative agency "may determine for itself the weight it will give to evidence it receives," and "is not required to explain why it valued one witness or statistic over another" Brenneck v. Planning and Zoning Commission,41 Conn. Sup. 593, 602, (1991). Generally, knowledge obtained through personal observation of the locus may properly be considered by the agency in arriving at [its decision]." Kaeser v. Conservation Commission, 20 Conn. App. 309, 316 (1989).
The agency "is not required to believe any witness, even an expert, nor is it required to use in any particular fashion any of the materials presented to it, so long as the conduct of the hearing is fundamentally fair." Huck v. Inland Wetlands and Watercourses Agency, supra, 542. Thus, in technically complex matters, expert testimony is not the only acceptable "substantial evidence" Kaeser, supra 314. Such a position "would have reduced the agency hearing to a nose count of experts," and would have made irrelevant all other testimony from (the erosion control officer) and from numerous neighbors." Id.
The plaintiff's burden, in challenging the agency's denial of its application, is to show that the agency acted arbitrarily or illegally, Madrid Corporation v. Inland Wetlands Agency,25 Conn. App. 446, 449, (1991) or to establish that the record does not support the agency's decision. Red Hill Coalition, Inc. Conservation Commission, 212 Conn. 710, 718, (1989).
The plaintiffs assert that the defendant must accept the testimony of the plaintiff's expert witnesses, namely David Lord a certified soil scientist and environmental consultant, and Robert Criscuolo, a professional engineer and land surveyor. However this is not the case. Huck v. Inlands Wetland and Watercourse supra. The defendant was required to consider all the testimony and evidence that was developed in these cases CT Page 8959 during all the hearings, including June 12, 1991, September 11, 1991 and September 25, 1991. It is the testimony of both David Lord and Robert Criscuolo which provides the basis for the defendant to permit three requested activities, namely retention of a page fence, retention of asphalt patches and planting of evergreen trees. Therefore it is incongruous or the plaintiff's to assert that the defendant did not heed the testimony of David Lord and Robert Criscuolo.
As regards the denial of permission to retain the gravel driveway and slope stabilization activities, the attorney for plaintiffs admitted that such activities were in fact conducted without the benefit of a permit. This is uncontroverted. See record 28, pp. 4, 7 (Rivezzi I, 032 37 17).
The record further supports the defendant's finding that the unauthorized activities had caused disruption to the wetlands and has caused flooding problems for neighboring landowners. Specifically, Mr. Walczak, a neighboring landowner stated that "this water appeared on my land throughout an area almost up to fifty (50) from that line and is still there today Record 28, p. 22. (Rivezzi 1). Mr. Walczak further contended that his property has become wetter since the unauthorized filling was done. Record 28, p. 27 (Rivezzi 1).
Testimony was also presented by Mr. Walczak which showed that the fill and stone drive were causing flooding. Record 23 (Rivezzi 2, 032 4821) Further, that a muddy sprinkling occurred on his property at the same time the plaintiffs were filling the slope area. Record 23, p. 41 (Rivezzi 2). Again Mr. Walczak testified that the installation of the stone road caused the water in his test wells to remain above ground, "like a pond, perpetually . . . ." and that another spring has "popped up" and that now both run across his property. Record 23, p. 44 (Rivezzi 2). This is emperical cause and effect, which the defendant relied on.
Richard Schultz, Planning and Zoning Administrator of the Town of North Branford, personally viewed the site and found ". . . . actual signs of disturbed earth material" at the subject site Record 28, p. 15 (Rivezzi 1).
The plaintiffs further claim that the defendant did not adhere to Conn. Gen. 22a-41(b) which provides:
CT Page 8960 In the case of an application which received a public hearing, a permit shall not be issued unless the commissioner finds that a feasible and prudent alternative does not exist. . . .
The burden of showing that such alternative exist is on the applicant. See Huck supra 203 Conn. at 553. Simply stated, the plaintiffs did not provide feasible and prudent alternatives. Further that because the permit was not issued, for the requested activity it therefore would not be necessary to find that a feasible and prudent alternative does not exist.
The final conclusion of the defendant was as follows:
1) The plaintiffs conducted filling activities without a permit.
2) Adjacent landowners' properties have become wetter due to changes in the ground water flow pattern caused by the plaintiff's filling activities.
3) The plaintiffs' activities caused erosion problems and permanent damage to the wetlands.
4) The wetlands would experience irreversible adverse effects if the existing fill and gravel driveway were allowed to remain. Return of Record 2, (Rivezzi 1).
The defendant further found that the page fence and asphalt patches would not adversely improve the wetland area. Return of Record 2 (Rivezzi)
These findings are amply supported in the record by substantial evidence. The defendant did not act illegally, arbitrarily or in abuse of discretion.
The appeals of the plaintiffs are dismissed.
The Court, JOHN W. MORAN, JUDGE CT Page 8961