[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION STATEMENT OF APPEAL
The plaintiffs, James Azzarito, Susan W. Azzarito, George B. Harvey, CT Page 14578 Elizabeth V. Harvey, Edward T. Walsh, and Patricia A. Walsh, appeal from a decision of the defendant, New Canaan planning and zoning commission, approving with modifications, the defendant John A. Kessler's application for a two lot subdivision.
 BACKGROUND
By application dated January 24, 2000, Kessler applied to the New Canaan planning and zoning commission for permission to subdivide a 6.959 acre parcel of property located in a two acre residential zone, into two proposed lots, 170 and 171. (Return of Record [ROR], Item 1.)
The commission conducted a public hearing on the subdivision application on February 29, 2000 (ROR, Item 16), which was continued to March 28, 2000, when the hearing was closed. (ROR. Item 17.) At a regular meeting held by the commission on April 25, 2000, the commission held a discussion on the subdivision application and considered a proposed motion for approval. (ROR, Item 14.) The subdivision application was unanimously approved on the same day. (ROR, Item 14.) The plaintiffs now appeal from the commission's approval of the subdivision application.
 JURISDICTION
General Statutes § 8-8 governs appeals taken from a decision of the planning and zoning commission to the Superior Court. "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.) Cardoza v. Zoning Commission, 211 Conn. 78, 82, 557 A.2d 545
(1989).
Aggrievement
"[P]leading and proof of aggrievement are prerequisites to the trial court'sjurisdiction over the subject matter of a plaintiff's appeal."Jolly, Inc. v. Zoning Board of Appeals, 237 Conn. 184, 192, 676 A.2d 831
(1996). General Statutes § 8-8 (a)(1) provides, in pertinent part, "`[a]ggrieved person' means a person aggrieved by a decision of a [commission and] includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the [commission.]
In the present appeal, the plaintiffs contend that they are aggrieved because they own land that abuts the property affected by the commission's decision and/or that they will be adversely affected because of the environmental issues created by the approval of the subdivision application. (Appeal, ¶¶ 6-10.) Specifically, the Azzaritos allege that CT Page 14579 they are aggrieved because their "property abuts a portion of an access drive that currently provides ingress and egress to and from the subdivision property, and would provide ingress and egress to and from both proposed subdivision lots." (Appeal, ¶ 6.) The Harveys allege that they are aggrieved because their "property includes a fee simple interest in a portion of the access drive that currently provides ingress and egress to and from the subject property, and would provide ingress and egress to and from both proposed subdivision lots." (Appeal, ¶ 7.) The Walshes allege that they are aggrieved because their property abuts the subdivision property and they will be adversely affected because of environmental issues raised by the application. (Appeal, May 19, 2000, ¶¶ 9-10.)
Kessler filed a motion to dismiss on September 12, 2000, alleging that the Azzaritos and the Harveys do not have standing to appeal from the commission's approval of the application because they do not own land that abuts or is within one hundred feet of the Kessler property. The court, D'Andrea, J., denied the motion to dismiss on November 16, 2000, holding that both the Azzaritos and the Harveys were aggrieved by the commission's approval of the application. Azzarito v. New Canaan Planningand Zoning, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 178535 (November 16, 2000, D'Andrea, J.). In its decision, the court determined that the phrase "the land involved in the decision" found in § 8-8 (a)(1) should not be so narrowly construed as to limit "the land involved" only to the applicant's property. Id. Thus, the court held that Wing Road, the road that provides access to and from the properties abutting it, is encompassed within the phrase "the land involved in the decision." Id. The court held that Wing Road, which was given significant consideration by the commission, was involved in its entirety in the commission's decision. Id. Accordingly, the court concluded that the Azzaritos and the Harveys "are statutorily aggrieved pursuant to § 8-8 because they abut or are within a one hundred [foot] radius of Wing Road in its entirety. While the Harveys own a portion of Wing Road, the Azzaritos own property abutting Wing Road." Id.
The plaintiffs also submitted certified copies of the deeds to their properties to the court. Resha, J., at the administrative appeal hearing, held on July 16, 2001. The court, Resha, J., determines that aggrievement was adequately pleaded and proven.
Timeliness and Service of Process
General Statutes § 8-8 (b) provides in pertinent part, that an "appeal shall be commenced by service of process in accordance with subsections (e) and (f) of this section within fifteen days from the date that notice of the decision was published as required by the general CT Page 14580 statutes." General Statutes § 8-8 (e) further provides that "[s]ervice of legal process for an appeal . . . shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the [commission,] and by leaving a true and attested copy with the clerk of the municipality."
The record contains the minutes of the April 25, 2000 regular meeting of the commission, along with a copy of the publication of the commission's decision in the New Canaan Advertiser on Thursday, May 4, 2000. (ROR, Item 14.) This appeal was commenced on May 19, 2000, by service of process on John Jex, chairman of the commission, Claudia Weber, the town clerk of New Canaan, and Kessler. (Appeal, May 19, 2000.) The court finds that this appeal was commenced in a timely manner, by service of process on the appropriate parties.
 SCOPE OF REVIEW
"[T]he scope of judicial review depends on whether the zoning commission has acted in its legislative or administrative capacity." (Internal quotation marks omitted.) Kaufman v. Zoning Commission,232 Conn. 122, 150, 653 A.2d 798 (1995). "[A planning] commission, in exercising its function of approving or disapproving any particular subdivision plan, [acts] in an administrative capacity The planning commission, acting in its administrative capacity herein, has no discretion or choice but to approve a subdivision if it conforms to the regulations adopted for its guidance. . . . If it does not conform as required, the plan may be disapproved." (Citations omitted; internal quotation marks omitted.) Reed v. Planning Zoning Commission,208 Conn. 431, 433, 544 A.2d 1213 (1988). The commission "is in the most advantageous position to interpret its own regulations and apply them to the situations before it." New London v. Zoning Board of Appeals,29 Conn. App. 402, 405, 615 A.2d 1054, cert. denied, 224 Conn. 922,618 A.2d 528 (1992). "Moreover, an agency's interpretation of its own regulations is entitled to deference." MacDermid, Inc. v. Department ofEnvironmental Protection, 257 Conn. 128, 138, ___ A.2d ___ (2001).
In reviewing subdivision proposals, a planning commission's function is limited to determining "whether [an] applicant's proposed use is one [that] satisfies the standards set forth in the [existing] regulations and the statutes." (Internal quotation marks omitted.) Kaufman v. ZoningCommission, supra, 232 Conn. 150. "In applying the law to the facts of a particular case the [commission] is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal." Double I Limited Partnershipv. Planning Zoning Commission, 218 Conn. 65, 72, 588 A.2d 624 (1991). "The trial court [has] to decide whether the [commission] correctly CT Page 14581 interpreted the regulations and applied it with reasonable discretion to the facts." Pascale v. Board of Zoning Appeals, 150 Conn. 113, 117,186 A.2d 377 (1962). "Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." (Internal quotation marks omitted.) MacDermid, Inc. v. Department of Environmental Protection,
supra, 257 Conn. 137.
"A zoning [commission], like any other administrative board or agency, may determine for itself the weight it will give to the evidence it receives in the form of oral testimony or any materials or statistical data that are presented on any particular issue . . . and, although it may have heard evidence to the contrary, it is not required to explain why it valued one witness or statistic over another." (Citations omitted.) Brennick v. Planning Zoning Commission, 41 Conn. Sup. 593,602, 597 A.2d 346 (1991). "If there is conflicting evidence in support of the zoning commission's stated rationale, the [trial] court . . . cannot substitute its judgment as to the weight of the evidence for that of the commission. . . . The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given." Quality Sand and Gravel, Inc. v. Planning ZoningCommission, 55 Conn. App. 533, 539, 738 A.2d 1157 (1999). "The evidence, however, to support any such reason must be substantial This so called substantial evidence rule is . . . broad enough and capable of sufficient flexibility in its application to enable the reviewing court to correct whatever ascertainable abuses may arise in administrative adjudication." Id, 540. "Courts are not to substitute their judgment for that of the [commission,] and decisions of local [commissions] will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing." (Citations omitted.) Whittaker v. ZoningBoard of Appeals, 179 Conn. 650, 654, 427 A.2d 1346 (1980).
 DISCUSSION
The commission approved the subdivision application with modifications on the basis that "the application generally meets the applicable subdivision regulations." (ROR, Item 15.) The commission determined that the status of Wing Road as a private road with a right of way width of fifty feet was proven by information submitted to the commission. (ROR, Item 15.) The commission noted that it heard the testimony of the residents concerning tree removal, safety and access issues and found "that the subdivision application [proposed] no tree removal and also [indicated] that no wetlands exist on the subject parcel." (ROR, Item 15.) Accordingly, the commission approved the subdivision application. CT Page 14582
The plaintiffs appeal on the ground that the commission acted illegally, arbitrarily and in abuse of its discretion in numerous ways by approving the subdivision application. Although the plaintiffs list numerous grounds for appeal. the court will only address those grounds briefed by the plaintiffs. "Issues that have not adequately been briefed may be deemed abandoned." Willow Springs Condominium Assn., Inc. v.Seventh BRT Development Corp., 245 Conn., 1, 38, 717 A.2d 77 (1998).
A. Whether the Commission Complied With the Subdivision and Zoning Regulations Requiring Proper Frontage on a Public Highway.
The plaintiffs assert that the commission failed to comply with the subdivision and zoning regulations in approving the Kessler subdivision application. Specifically, the plaintiffs assert that the commission failed to comply with § 55-4.11 of the New Canaan subdivision and street regulations and §§ 60-14.2 and 60-14.5 of the New Canaan zoning regulations. The plaintiffs contend that neither of the proposed lots have the minimum frontage required and consequently, the subdivision application should have been denied. The defendants contend that the subdivision application complied with all the requirements in the subdivision regulations and thus the commission properly approved the subdivision application.
Chapter 55, article I, § 55-1.3 of the New Canaan subdivision and street regulations lists the general requirements for approval of a subdivision application.[1] Article IV enumerates the specific standards and requirements necessary for approval of a subdivision application. Within article IV is § 55-4.11,[2] which requires that the lot arrangement comply with the town's regulations and ordinances, and provide driveway access to the lot from an existing street or a street approved by the commission. The plaintiffs argue that the commission failed to comply with this section because neither lot complies with the minimum frontage requirement of the zoning regulations, The lot arrangement and driveway access requirements are contained in §§ 60-14.2 and 60-14.5 of the New Canaan zoning regulations.
Chapter 60, article XIV, § 60-14.2 lists three requirements in relation to lot arrangement. In addition to these requirements, each lot must also comply with the requirements provided in the Schedule of Residential Zoning Requirements (the Schedule), located at the end of Chapter 60. The Schedule lists requirements for each type of residential zone, including, but not limited to, the minimum area and width of a zone unit, the maximum height of a building, and the minimum width and area of inner courts. Section 60-14.2 A[3] requires that a lot in the two acre zone contain within it a circle with a diameter of 225 feet. The court CT Page 14583 notes that the 225 foot requirement is also listed in the Schedule, which provides that a lot in the two acre zone should have a width of 225 feet. Subsection B[4] provides that a lot in the two acre zone that does not have the required width on a public highway and is served by an accessway, as provided in § 60-14.5, is not subject to the specific front, side and rear yard dimensions listed in the Schedule and in § 60-8.1. Instead, subsection B provides that any building on a lot in a two acre zone cannot be located less than 40 feet from any of the lot's property lines. Subsection C explains how to compute the minimum building coverage.
The subdivision map, as submitted, indicates that each lot has a width of 225 feet and contains within it a circle with a diameter of 225 feet. (Administrative Appeal Hearing Exhibit 1, Subdivision Map.) As explained later, however, the zoning regulations require that each lot have its 225 foot width on a public highway, subject to the four exceptions in § 60-14.5. Here, because neither lot has the required 225 foot width on apublic highway, the requirements of subsection A are not satisfied.
The court finds that neither lot satisfies the requirements of subsection B. The commission's notice of approval of the application provides that Wing Road is a private road with a right of way width of fifty (50) feet. (ROR, Item 15.) The subdivision map indicates that lots 170 and 171 have their required width either on a private road and/or on an accessway. In either case, neither lot has the minimum width on a public highway. (Administrative Appeal Hearing Exhibit 1, Subdivision Map.) In addition, as will be discussed, neither lot is served by an accessway as provided in § 60-14.5. Accordingly, because neither lot satisfies the requirements of subsection B, both lots must comply with the specific front, side, and rear yard depths listed in the Schedule. The Schedule provides that the minimum front, side, and rear yard depths should be 45, 35, and 50 feet, respectively. (ROR, Item 46, Schedule of Residential Zoning Requirements.) The subdivision map indicates that only Lot 170 complies with the minimum front, side, and rear yard depths listed in the Schedule. (Administrative Appeal Hearing Exhibit 1, Subdivision Map.) Lot 171, however, fails to comply because it complies with the forty foot depth listed in subsection B, instead of the depth listed in the Schedule. The subdivision application, as submitted, does not comply with subsection B. The court does not address compliance with subsection C because the application does not indicate the type of structure that will be built on the lot and the area that it will cover. The court finds that neither lot complies with the requirements of § 60-14.2 and the Schedule.
Chapter 60, article XIV, § 60-14.5 provides four exceptions to the requirement that a lot in any residential zone, shall have the required CT Page 14584 minimum width upon a public highway.[5] The opening clause of § 60-14.5 provides, in pertinent part, "[i]n residential zones, no zoning permit will be issued for the construction of a residence . . . unless therequired minimum width for the zone involved, as set forth in § 60-14.2of these regulations, shall be upon a public highway, exceptthat. . . ." (Emphasis added.) The plain language of this clause provides that the exceptions apply only when a lot does not have the required minimum width upon a public highway. This interpretation is also supported by the language contained in § 60-14.2 B, wherein the exception to the front, side, and rear yard dimensions is applied only when a lot does not have the required width on a public highway
and is served by an accessway as provided in § 60-14.5. In addition, in an earlier case construing the language of § 60-14.5,Mulkerrin v. Planning Zoning Commission, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 166711 (July 6, 1999, Karazin, J.), the court stated that the exceptions in § 60-14.5 need only be looked at if the lot does not have the requisite legal frontage on a public road. Thus, the opening clause of § 60-14.5 modifies the 225 foot width requirement listed in § 60-14.2 A by requiring that any lot in a two acre residential zone have 225 feet of its width on a public highway. Because neither lot has the required width on a public highway, each lot must comply with one of the four exceptions enumerated in § 60-14.5, in order for the subdivision application to be approved.
The four exceptions enumerated in § 60-14.5 apply to various situations. Subsection A applies to an application when a parcel of land is subdivided into two zone units, and provides that if one of the two zone units does not have the required width on a public highway, zoning permits for both zone units will be issued where the zone unit without the required width on a public highway has access to a public highway by means of an accessway not less than twenty five feet in horizontal width. The New Canaan zoning regulations provide that a "zone unit" is a "plot of land having the minimum width and area required by the schedule for a conforming use in any zone." (ROR, Item 46, p. 6190.) The court will hereinafter use the term "lot" to refer to "zone unit." Subsection B applies to an application when a parcel of land is subdivided into three or more lots and provides that a zoning permit for the third or any subsequent lots will not be issued until a subdivision thereof has been made and a map thereof filed with the town of New Canaan. Subsection C applies when a lot has the required width as provided in § 60-14.2, 225 feet, upon a roadway other than a public highway, provided that such roadway has a width of fifty feet and a traveled way of at least twenty feet. Finally, subsection D applies to a parcel in one ownership which has access to a public highway by means of a private accessway having a width of at least one rod. "One rod equals sixteen and a half (16 1/2) CT Page 14585 feet." Mulkerrin v. Planning Zoning Commission, supra, Superior Court, Docket No. 166711.
The court finds that the record does not contain sufficient evidence that each lot complies with one of the four exceptions enumerated in § 60-14.5. Section 60-14.5 A indicates that of the two lots, one must have the required width on a public highway. See Mulkerrin v. Planning Zoning Commission, supra, Superior Court, Docket No. 166711. The subdivision map, as submitted, indicates that lot 170 has the required width on Wing Road and lot 171 has the required width partly on Wing Road and partly on an accessway. (Administrative Appeal Hearing Exhibit 1, Subdivision Map.) Neither lot 170 or 171 have the required width on a public highway because the commission's findings indicate that Wing Road is a private road, not a public road or an accessway. (ROR, Item 15.) Accordingly, neither lot complies with the requirements of subsection A. Subsection B applies to an application that seeks a subdivision of three or more lots. Here, the subdivision application is not subject to the exception in subsection B because the application sought only a two lot subdivision.
As to subsection C, the commission determined that Wing Road is a private road and not a public road or accessway. (ROR, Item 15.) Although the subdivision map indicates that Wing Road's width decreases from fifty feet to thirty eight feet at a point when it runs along lot 170, the commission's findings indicate that it determined Wing Road to have a traveled right of way of fifty feet along its entire span. (ROR, Item 15.) "An agency's factual and discretionary determinations are to be accorded considerable weight by the [reviewing court.]" MacDermid, Inc.v. Department of Environmental Protection, supra, 257 Conn. 139-40. Lot 170 complies with the requirements of subsection C because it has the required width, 225 feet, upon Wing Road, a roadway other than a public highway, that has a width of fifty feet and a traveled way of at least twenty feet. Lot 171, however, does not comply with the requirements of subsection C for two reasons. First, it does not comply with subsection C's requirement that each lot have its required width on a roadway other than a public highway. Lot 171 has a width of thirty feet on wing Road, with its remaining width on an accessway to parcel 132, the Walsh property. The New Canaan subdivision and street regulations provide that an accessway "[s]hall mean a private way for vehicular traffic serving not more than two (2) interior residential lots. . . ." The subdivision and street regulations further provide that a road or street "[s]hall mean a way permanently dedicated to movement of vehicles and pedestrians and providing the principal means of access to abutting property . . . and shall include highways, thoroughways, thoroughfares, parkways, avenues, roads, lanes, alleys, driftways or other arteries of vehicular traffic, but not private driveways or accessways."[6] Accordingly, an CT Page 14586 accessway is not a roadway other than a public highway and lot 171 does not comply with the requirement that each lot have the required width on a roadway other than a public highway. Second, lot 171 does not comply with subsection C's requirement that the roadway have a width of fifty feet and a traveled way of at least twenty feet. Although Wing Road complies with this requirement, the accessway to parcel 132 fails to comply therewith because, according to the subdivision map, it has a traveled way of thirteen feet along its entire span. (Administrative Appeal Hearing Exhibit 1, Subdivision Map.) Accordingly, only lot 170 complies with the requirements of subsection C.
Finally, as to subsection D, both lots 170 and 171 are in one ownership, that of the Kesslers. The subdivision map indicates that both lots 170 and 171 have access to a public highway by way of Wing Road, a private road. (Administrative Appeal Hearing Exhibit 1, Subdivision Map.) Neither lot, however, obtains access to a public highway by means of a private accessway because both lots use Wing Road to access a public highway. (Administrative Appeal Hearing Exhibit 1, Subdivision Map.) In the alternative, even if both lots use the accessways abutting their properties to obtain access to a public highway, they still do not comply with this subsection. The subdivision map indicates that lot 170 could use the accessway to the Snierson parcel, which is fifty feet wide, above the one rod requirement. (Administrative Appeal Hearing Exhibit 1, Subdivision Map.) The subdivision map indicates that lot 171 could use the accessway to the Walsh parcel. However, the subdivision map indicates that the Walsh accessway is only thirteen feet wide, below the one rod requirement. (Administrative Appeal Hearing Exhibit 1.) In addition, neither accessway leads directly to a public highway. Instead, the accessways provide access to Wing Road, which enables each lot to access a public highway. Accordingly, neither lot complies with the requirements of subsection D. Based on the foregoing, the court finds that because lot 171 fails to comply with one of the four exceptions enumerated in § 60-14.5, the subdivision application should not have been approved.
The court finds that the record does not contain substantial evidence to support the approval of the subdivision application because neither lot has the required minimum width on a public highway and only lot 170 complies with one of the exceptions in § 60-14.5. Accordingly, the plaintiffs' appeal is sustained on this ground.
B. Whether the Commission Unlawfully Received and Relied on Evidence from Ex Parte Site Visits and Inspections.
The plaintiffs contend that one or more commission members unlawfully received and relied on information regarding the application from ex parte site visits and inspections in making their decision on the CT Page 14587 subdivision application, in violation of the plaintiffs' due process rights.[7] The plaintiffs contend that they were prejudiced by the commissioners' ex parte site visits because the commissioners were influenced by the surveyor's use of stakes to mark the dimensions of Wing Road to demonstrate that Wins Road complied with the New Canaan subdivision and street regulations. The plaintiffs contend that the defendants cannot demonstrate that the plaintiffs were not prejudiced by the ex parte site visits and inspections.
The defendants contend that the record does not indicate whether any commissioners conducted a site visit or inspection or that any information was derived therefrom. In addition, the defendants argue that even if site visits or inspections were conducted, they were not illegal because during the March 28, 2000 public hearing, Chairman Jex recommended that the commissioners visit the site of the proposed subdivision.[8] Finally, the defendants argue that because the subject of Wing Road had been discussed at length, a site inspection would not have resulted in any additional evidence that would be prejudicial to the plaintiffs.
"[W]hile proceedings before zoning and planning boards and commissions are informal and are conducted without regard to the strict rules of evidence . . . nevertheless, they cannot be so conducted as to violate the fundamental rules of natural justice. . . . The commission could not properly consider additional evidence submitted by an applicant after the public hearing without providing the necessary safeguards guaranteed to the opponents of the application and to the public. This means a fair opportunity to cross-examine witnesses, to inspect documents presented and to offer evidence in explanation or rebuttal. . . ." (Citation omitted; internal quotation marks omitted.) Blaker v. Planning ZoningCommission, 212 Conn. 471, 477-78, 562 A.2d 1093 (1989). "Our law clearly prohibits the use of information by a municipal agency that has been supplied to it by a party to a contested hearing on an ex parte basis."Norooz v. Inlands Wetlands Agency, 26 Conn. App. 564, 569, 602 A.2d 613
(1992).
"An administrative agency can be the investigator and adjudicator of the same matter without violating due process. . . . Unlike judicial proceedings, an administrative [commission] may act upon facts which are known to it even though they are not produced at the hearing. . . . In fact, an agency is not required to state all its determinations on the record so long as the record provides an adequate basis for the agency's decision." (Citations omitted; internal quotation marks omitted.) Grimesv. Conservation Commission, 243 Conn. 266, 276-77, 703 A.2d 101 (1997). "[T]he purpose of a site visit is to acquaint the members of a commission with the property at issue." Id., 278. "Commissioners are permitted to CT Page 14588 base their decisions in part on facts within their `peculiar knowledge,' including information gleaned from a site inspection, as long as those facts are disclosed to the parties. . . . A site visit is therefore an appropriate investigative tool." Id., 277-78. "Investigative procedures, such as site inspections, therefore are not an integral part of the hearing process, although the agency must disclose to the parties any information relied upon in reaching a decision so that they may comment upon it." Id., 277-78. "Once it has it has been demonstrated that an improper receipt of ex parte evidence has occurred, a rebuttable presumption of prejudice arises with the burden to show no prejudice on those seeking to uphold the validity of the commission's decision."Palmisano v. Conservation Commission, 27 Conn. App. 543, 547, 608 A.2d 100
(1992).
In the present case, the plaintiffs maintain that some or all of the commissioners conducted a site visit or inspection. However, the plaintiffs failed to provide, and the record is devoid of, any evidence that such visit or inspection occurred. At the time the colloquy among the commissioners and Mellick occurred, neither the plaintiffs nor any other persons in attendance objected to the site visit or inspection taking place.[9] The court also notes that Chairman Jex specifically recommended that the commission members conduct the site visit or inspection "individually, and not in the company of any of the applicants or petitioners or neighbors."[10] (Emphasis added.) (ROR, Item 17, p. 19.) In addition, although the commission listed all the evidence that it relied upon in making its decision, the notice of approval does not indicate that the commission conducted and/or relied upon a site visit or inspection, as required by General Statutes § 8-26.[11] The court finds that the plaintiffs have failed to sustain their burden of proof and to demonstrate that the commission received and relied on ex pane information. Accordingly, the court finds that the plaintiffs' claim is without merit.
In conclusion, the court finds that the commission failed to comply with its regulations in approving the Kessler subdivision application. Accordingly, the court sustains the plaintiffs' appeal.
So Ordered,
Dated at Stamford, Connecticut, this 15th day of October, 2001.
Robert T. Resha, J.