CAROL D. LARSEN [THE BOSSERT CORPORATION, SUBSTITUTED PLAINTIFF] *v.* ZONING COMMISSION OF THE CITY OF NORWALK ET AL.

KING, C. J., MURPHY, ALCORN, SHANNON and HOUSE, Js.

Argued February 2—decided March 1, 1966

*Robert A. Slavitt,* with whom, on the brief, were *Abraham Slavitt* and *George A. Vardamis,* for the appellant (plaintiff).

*John Keogh, Jr.,* for the appellees (defendants).

Murphy, J.  Carol D. Larsen, as the owner of property in the Orchard Hill section of Norwalk, appealed to the Court of Common Pleas from the action of the Norwalk zoning commission in 1962 in upgrading the residential zoning requirements for two tracts of land.  These tracts are in the eastern part of the city, adjacent to the Westport town line.  The court upheld the action of the commission and rendered judgment dismissing the appeal on April 1, 1963.  The Bossert Corporation, having thereafter acquired the Larsen property, was then substituted as the party plaintiff, and it took this appeal.

Orchard Hill Road is a private road which runs easterly from Wolfpit Avenue to within a short distance of the Westport town line where it turns sharply to the northeast and continues into Westport.  To avoid the use of confusing compass directions, we will treat Orchard Hill Road as though it continued easterly to the town line without making the turn.  Prior to the action of the commission, the area north of Orchard Hill Road was in an A residence zone for one-family houses on lots requiring a minimum area of 12,500 square feet.  The land south of that road was zoned B residence for one-family houses on lots one-half the size of those in the A residence zone.  Norwalk Zoning Regs., "Schedule Limiting Height and Bulk of Buildings" (1929, as amended).  A group of property owners in the area on both sides of Orchard Hill Road petitioned the commission to change the zone of all of the property north of the road and of a large portion of that lying to the south of that road to AAA residence, which requires one-acre lots.  That

is the highest residence zone in Norwalk. The area involved in this request contains about fifty acres and was designated as tract 1 in the petition. Also included in the petition was a request to change the zone of tract 2 from B residence to A residence. This tract includes all the property east of Wolfpit Avenue, south of Orchard Hill Road, north of Richards Lane and immediately to the west of the property south of Orchard Hill Road which is contained in tract 1.

At the public hearing, at which all of the members of the commission were present, many of the owners of property in the Orchard Hill area spoke, or were recorded, in favor of the changes as were owners of other properties nearby. The only one opposed was Edwin S. Larsen, the husband of the original plaintiff. He stated that he had originally owned a tract of about seventy acres and had sold all but about twenty acres. The record does not indicate how much of the acreage he retained is in the areas for which the zone changes were sought. The Norwalk tax map in evidence before the commission shows that a substantial portion of his property is below the boundary line of tract 1 and will not be affected by the change in zone. The tax map does not list him or his wife as the owner of any of the property in tract 2, although the plaintiff in its brief states that it owns the major portion of the property in that tract.

The evidence before the commission showed that Orchard Hill Road had been laid out by Larsen, who sold the properties to the proponents of the changes or their predecessors in title. With three exceptions, all of these properties are in excess of one acre in size, and the three which are not are just a fraction smaller. It is a high-class res-

idential area with houses ranging in value from $25,000 to $60,000. Larsen informed the commission that he had agreed to sell his property to the substituted plaintiff, who planned to develop it for garden apartments, a permitted use in a B residence zone, subject to the approval of the planning commission. Norwalk Zoning Regs. § 3 (A) (3) (1929, as amended).

One of the members of the commission was absent from the executive meeting at which the other four members voted unanimously to approve the upgrading of both tracts. The reasons given by the commission for the change in tract 1 were that the change had been approved by the planning commission, that the change was in accord with the comprehensive plan for the city, that the character of the area warrants the upzoning, and that the terrain conforms to the natural, presently existing boundary line abutting the B residence zone to the south. The reason given for the change in tract 2 was that the area serves as a buffer zone between AAA residence and B residence zones where there is no natural topographical barrier.

The principal argument advanced by the plaintiff on its appeal is that an upgrading of the zone in substantially the same area as that embraced in both tract 1 and tract 2 was denied by the commission on June 24, 1955, and that there have been no substantial changes in the area and no new conditions have arisen since that date which would warrant a reversal of the earlier decision. It cites the opinion of this court in *Wolfpit-Villa Crest Assn., Inc.* v. *Zoning Commission,* 144 Conn. 560, 135 A.2d 732, in support of the claim that the same area is involved. Technically, that claim is not correct although the *Wolfpit* case does bear a relationship

to the area involved herein. In *Wolfpit,* a petition was filed with the commission in 1955 to upgrade from B residence to A residence an extensive area on both sides of Wolfpit Avenue north of a light industrial zone on Westport Avenue, the Boston Post Road. Because of the size of the area, the differences in density and for a better description, the commission broke down the overall area into four smaller areas and conducted its hearing and determined the petition as it related to the merits of each of the four areas. The commission approved the change for area 1, which included all of the land on the west side of Wolfpit Avenue opposite the properties for which the upgrading was sought in this case. The commission denied the changes in areas 2, 3 and 4. The appeal in *Wolfpit* involved only area 4, which did not embrace any of the property in the Orchard Hill section. No appeal was taken from the denial of the change in area 2, which did, however, include that portion of both of the tracts with which we are now concerned lying to the south of Orchard Hill Road. It did not include any of the property north of Orchard Hill Road. As the changes sought in this case do not involve substantially the same area as that involved in 1955 nor seek substantially the same relief as that sought in 1955, the rule which the plaintiff seeks to have invoked does not apply in this case. *Tarasovic* v. *Zoning Commission,* 147 Conn. 65, 70, 157 A.2d 103; *Metropolitan Homes, Inc.* v. *Town Plan & Zoning Commission,* 152 Conn. 7, 11, 202 A.2d 241. The most opposition to the proposed change in area 2 at the 1955 hearing came from the owners of the Fullin property, which has since been developed along Cider Lane and Fullin Road. Many of the present residents on both of these streets were recorded in

favor of the upgrading requested in the present petition although their properties lie outside the affected area.

There is no merit to the plaintiff's claim that the change of zone in tract 1 constitutes spot zoning. *Metropolitan Homes, Inc.* v. *Town Plan & Zoning Commission,* supra, 12. The change involves a large area, and there are many properties in it. In addition, the change is in accordance with the comprehensive plan and has the approval of the planning commission. We do have some misgiving about the change in tract 2. It involves eight pieces of property in an area roughly 600 feet by 400 feet. Considered separately, this change seems to have the earmarks of spot zoning. *Eden* v. *Town Plan & Zoning Commission,* 139 Conn. 59, 63, 89 A.2d 746. The plaintiff makes no attempt in its brief, however, to distinguish between the tracts involved so far as it advances the spot zoning argument. We shall consider the question as the commission did, i.e., as the upgrading in tract 2 is related to the change in tract 1. The commission found that the difference in elevation along the new southerly boundary of tract 1 and the adjoining B residence zone formed a natural barrier between these zones and that, since there was no such natural barrier between the AAA residence zone and the B residence zone, tract 2 would serve as a buffer. The trial court in the company of counsel viewed the areas involved and affirmed the judgment of the commission. On the principle that zoning questions are matters of local concern which are usually best determined by the zoning authority, we find no reason in this record for substituting our judgment for that of the commission with respect to the change of zone in tract 2. *Zieky* v. *Town Plan & Zoning Commission,*

151 Conn. 265, 267, 196 A.2d 758; *Summ* v. *Zoning Commission,* 150 Conn. 79, 89, 186 A.2d 160, and cases cited.

The absence of one member of the commission at the executive meeting when the other four members voted unanimously for the changes did not affect the legality of the votes. In the absence of a signed protest under circumstances not present here, a majority vote of the commission was sufficient. General Statutes § 8-3.

There is no error.

In this opinion the other judges concurred.