LAWRENCE P. CZAJKOWSKI *v.* PLANNING AND ZONING BOARD OF THE CITY OF MILFORD ET AL.
(5401)

DUPONT, C. J., BIELUCH and FOTI, Js.

Argued January 14—decision released May 3, 1988

*Bruce L. Levin,* for the appellant (named defendant).

*Thomas J. Ryan,* with whom was *John M. Claydon, Jr.,* for the appellee (plaintiff).

BIELUCH, J. The defendant planning and zoning board of the city of Milford[1] (board) appeals from the judgment of the trial court sustaining the plaintiff's appeal from the board's decision approving an application to subdivide certain property of the defendant Michael Kivic which abuts land owned by the plaintiff. The trial court found that one of the two lots created by the division of the property did not comply with the minimum requirements of the city's zoning regulations for lot width. The board claims in this appeal that the court misinterpreted and misapplied the applicable zoning regulations, and thereby erred in sustaining the plaintiff's appeal. We find no error.

The following undisputed facts are relevant to this appeal. On January 16, 1985, the defendant board approved a two lot subdivision of an "L" shaped piece of property running between Orange Avenue and Stiles Street in Milford. Lot No. 1 of the proposed subdivision has an area of 18,605 square feet, a frontage on Orange Avenue of 111.20 feet and a depth of approximately 162 feet. Lot No. 2 of the proposed subdivision has an area of 32,438 square feet and the following dimensions: north–204.52 feet; east–228.52 feet; south–71.34 feet on Stiles Street and 115.74 feet on adjoining property; and west–103.05 feet on the same

---

[1] The other defendants involved in this action were Michael Kivic, the owner of the property in question, and William R. Towle and Joseph Duhamel, the applicants for permission to subdivide Kivic's property. None of these defendants is involved in this appeal by the named defendant.

adjoining property and 119.76 feet on Lot No. 1, having the shape of an inverted or reverse L.

Section 3.2.9 of the zoning regulations of the city of Milford states: "Each lot shall comply with the minimum requirements of the Zoning Regulations for the Zoning District in which it is located." The subdivision in question is located in the R-18 residential district. Section 3.1.4.1 of the zoning regulations states the minimum requirements for this district as follows: lot area–18,000 square feet; lot width–100 feet; and lot depth–125 feet.

The plaintiff appealed to the trial court as an abutting owner under the provisions of General Statutes § 8-28, alleging that his property would be adversely affected and depreciated in value by the increased traffic hazards and nonconformity of the subdivision. The plaintiff claimed that the action of the board was illegal in that Lot No. 2 of the subdivision did not comply with the minimum requirements for the zoning district in which it was located.

The trial court sustained the plaintiff's appeal, finding that Lot No. 2 did not have the required lot width of 100 feet. Therefore, the lot did not comply with the minimum requirements of the zoning regulations for the R-18 district in which it was located. The board has appealed from the court's conclusion that it had acted illegally in approving the subdivision.

The board's sole claim on appeal is that the court misconstrued and misapplied the applicable zoning regulations in determining that Lot No. 2 did not meet the minimum requirements for lot width. Specifically, the board claims that the court erroneously measured lot width at the forty feet setback line from Stiles Street, the minimum front yard requirement, and failed to take into account the extension of the front yard to forty feet beyond the jog or projection of the adjoining land

between the street and the rear portion of the lot. The board argues that the court should have measured the required lot width at a setback line delineated at forty feet from the adjoining land projecting between the rear of Lot No. 2 and Stiles Street. This would have produced a lot width in excess of 100 feet and would have been, according to the board, a "rational result or reasonable application of the zoning regulations."

"Lot width" is defined in § 11.2 of the Milford zoning regulations as: "The horizontal distance between side lot lines measured parallel to the street line and along the building setback line for the front yard." The "building setback line" is defined also in the same section of the zoning regulations as: "The line within a lot defining the minimum required horizontal distance between the principal building or use to be erected and an adjacent street or lot line." "Front yard" is defined also in § 11.2 as: "An open, unoccupied space extending across the *full width* of the lot between the front wall of the principal building and the street line. The depth of the required front yard shall be measured horizontally from and perpendicular to the nearest point of the front lot line toward the nearest part of the building on the lot." (Emphasis added.) Section 3.1.4.1 of the zoning regulations sets the minimum requirement for the front yard or building setback line in Zone R-18 as forty feet, and for the lot width as one hundred feet, to be measured at the required minimum building setback line of forty feet.

The trial court found that the width of Lot No. 2 on the proposed subdivision as measured by the requirements of the zoning regulations was approximately 71.34 feet, the length of the frontage on Stiles Street, and was, therefore, insufficient to qualify as a subdivision lot. Under the zoning regulations, the front yard definition states that the front yard is that space between the front wall of the building and the street

line for the full width of the lot. Therefore, if the front yard is of sufficient width between the building and the street line, the lot is conforming. Because the proposed building line of Lot No. 2 was set at approximately 143 feet from the street line, or forty feet from where the rear width of the lot extended to more than 100 feet, the front yard was not for the full width of the lot as required by the definition. This would allow the creation of a lot with a nonconforming front yard.

The trial court did not err in its interpretation of the zoning regulations in question, or in its application of this interpretation to the facts of this case. The board urges us to find that Lot No. 2 meets the requirement for lot width in that the property is more than 100 feet wide along the building setback line as this line was defined by the board. This position completely ignores these words of the definition of lot width in the zoning regulations: "The horizontal distance . . . measured . . . along the building setback line *for the front yard.*" (Emphasis added.) The building setback line is defined as "the line within a lot defining the *minimum* required horizontal distance between the principal building or use to be erected and an adjacent street or lot line." The minimum requirement for the front yard according to the zoning regulations is forty feet. It is impossible to measure the lot width requirement here without taking into account the front yard definition of "open, unoccupied space extending *across the full width of the lot*" at the "minimum building setback line" of forty feet. The court correctly did so, measuring the width of the lot at the minimum setback or front yard line of forty feet from the street line. The court's conclusion that at this point the width of Lot No. 2 was less than the required minimum of 100 feet is clearly supported by the record.

The Milford zoning regulations must be interpreted in light of our ordinary rule that " '[w]here the language

of the statute is clear and unambiguous, the courts cannot, by construction, read into statutes provisions which are not clearly stated.' *Point O'Woods Assn., Inc.* v. *Zoning Board of Appeals,* 178 Conn. 364, 366, 423 A.2d 90 (1979). 'A zoning ordinance is a local legislative enactment, and in its interpretation the question is the intention of the legislative body as found from the words employed in the ordinance. . . . The words employed are to be interpreted in their natural and usual meaning.' (Citations omitted.) *Lawrence* v. *Zoning Board of Appeals,* 158 Conn. 509, 511, 264 A.2d 552 (1969)." *Harlow* v. *Planning & Zoning Commission,* 194 Conn. 187, 193–94, 479 A.2d 808 (1984). "Construction of zoning regulations is a regular function of the courts. See, e.g., *Pascale* v. *Board of Zoning Appeals,* 150 Conn. 113, 116, 186 A.2d 377 (1962). The full panoply of principles of statutory construction are available to aid in the construction of local ordinances. *Manchester* v. *Manchester Police Union,* 3 Conn. App. 1, 6, 484 A.2d 455 (1984); see *Shelby Mutual Ins. Co.* v. *Della Ghelfa,* 3 Conn. App. 432, 489 A.2d 398 (1985), [aff'd, 200 Conn. 630, 513 A.2d 52 (1986)]." *East Lyme* v. *Waddington,* 4 Conn. App. 252, 259 n.2, 493 A.2d 903 (1985).

A general rule of interpretation of zoning regulations is that the language used in the ordinance should be examined in light of other provisions in the ordinance. *Pascale* v. *Board of Zoning Appeals,* supra, 117. "It is a standard rule of construction that, 'whenever feasible, the language of an ordinance will be construed so that no clause is held superfluous, void or insignificant.' *Planning & Zoning Commission* v. *Synanon Foundation, Inc.,* 153 Conn. 305, 309, 216 A.2d 442 [1966]." *Melody* v. *Zoning Board of Appeals,* 158 Conn. 516, 521, 264 A.2d 572 (1969).

In light of these principles of construction, the trial court properly held that "the definition of 'front yard'

is integral in reaching a correct interpretation of the definition of 'lot width.' " The trial court did not err in defining the width of Lot No. 2 in this context. The trial court applied the applicable zoning regulations in conjunction with each other and interpreted the language of the relevant zoning requirements in their natural and usual meaning.

There is no error.

In this opinion the other judges concurred.