[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The dispositive issue in this appeal is whether principles of estoppel may give rise to a hardship sufficient to support the granting of a variance where, pursuant to erroneously issued zoning approvals, a property owner has substantially constructed additions to a nonconforming building which houses a conforming use. Under the facts of this case, the court answers this question in the affirmative.
The individual defendants Kevin Conroy, Steven Cook and William Conroy, hereafter referred to as the defendants, are the owners of a building situated in a Business No. 3 zone in the City of Norwalk. The building fronts Rowayton Avenue on the east and also borders the Five Mile River. While the record does not contain the dimensions of the building, interpolation from maps and drawings in the record indicates that the dimensions of the building are approximately 45 feet by 32.5 feet, excluding a conforming wood deck. The building houses a restaurant. In this zone, a restaurant is a permitted use. The building, however, is nonconforming because part of the structure is within the thirty-five foot front setback prescribed by the zoning regulations.
In connection with a renovation of the interior of the building, the defendants proposed to remove certain portions of the structure which were within the thirty-five foot setback. The defendants also proposed to construct a dormer measuring about 32.5 by 17.5 feet, over the nonconforming portion of the building. The dormer brought the height of the building to twenty-five feet in a zone in which a building height of 1 1/2 stories and thirty-five feet is permitted. In addition, the defendants proposed to construct a "stoop" or service entry way measuring about nine feet by 3 1/2 feet. Both the dormer and the stoop are situated within the thirty-five foot setback.
Between June 19, 1990 and July 31, 1992, the defendants obtained various zoning approvals for these additions. In August or September of 1992, pursuant to those approvals, the defendants began construction. In January 1993, the zoning inspector issued a cease and desist order claiming that the addition of the dormer and the stoop violated the front setback provision of the regulations. The defendants did not appeal that order. Rather, on February 3, 1993, the defendants applied for a variance of the front setback requirement of thirty-five feet to fourteen feet for the dormer and 9.8 feet for the stoop. After a duly noticed public hearing, the board granted that application. The plaintiffs have appealed. CT Page 1903 I.
With certain exceptions not relevant here, General Statutes sec. 8-8 (b) provides that "any person aggrieved by any decision of a board may take an appeal to the superior court. . . ." "`Board' means a . . . zoning board of appeals. . . ." In an appeal from such a board, the court should make a finding of aggrievement. Baccante v. Zoning Board of Appeals, 153 Conn. 44, 45, 212 A.2d 411 (1965); Fox v. Zoning Board of Appeals, 146 Conn. 665, 667, 154 A.2d 520
(1959). By statutory fiat, "[i]n the case of a decision by a . . . zoning board of appeals, `aggrieved person' includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board." The evidence presented to the court establishes that the plaintiffs Kavanaugh and Drummond-Hay own property within a radius of one hundred feet of the land for which a variance was granted. Therefore, those plaintiffs are aggrieved by the decision of the board. McNally v. Zoning Commission, 225 Conn. 1, 8, 621 A.2d 229
(1993); Caltabiano v. Planning Zoning Commission, 211 Conn. 662,560 A.2d 975 (1989); Smith v. Zoning Board of Appeals, 203 Conn. 317,321, 524 A.2d 1128 (1987); Brennick v. Planning Zoning Commission, 41 Conn. Sup. 593, 594, 597 A.2d 346 (1991). Since some of the plaintiffs are aggrieved by the decision of the board "it is not necessary to resolve whether the other plaintiffs are aggrieved . . . and we refer herein to all the plaintiffs as the plaintiffs." Protect Hamden/North Haven from Excessive Traffic Pollution, Inc. v. Planning Zoning Commission, 220 Conn. 527, 529n. 3,600 A.2d 757 (1991); see Josephson v. Planning Board, 151 Conn. 489, 492,199 A.2d 690 (1964); Nowicki v. Planning Zoning Board, 148 Conn. 492,495, 172 A.2d 386 (1961); DeRito v. Zoning Board of Appeals,18 Conn. App. 99, 103, 556 A.2d 632 (1989).
 II.
In their appeal, the plaintiffs allege that "the [b]oard acted illegally, arbitrarily and in abuse of the discretion vested in it in that the board granted the variance despite the fact that the applicant failed to prove hardship, or because any hardship was self-imposed or financial only. In addition, "the plaintiffs claim, "the Board's action was null and void because both the application and the grant of variances were to 89 Rowayton Av. Corp., a nonexistent entity and not the owner of the property." While the plaintiffs have briefed the first claim, they have not briefed the second. Therefore, the second claim is deemed abandoned. Grace Community Church v. Planning Zoning Commission, 42 Conn. Sup. 256, CT Page 1904 259, 615 A.2d 1092 (1992) ("[i]ssues that were raised in the appeal but not briefed by the plaintiff . . . are considered abandoned.").
At the conclusion of the board's discussion of the application, the chairman made the following motion: "Whereas the applicant has demonstrated [that] this is a legally non-conforming use at a twenty five point two tenths setback where thirty eight [sic] feet is required. Whereas applicant proposes to provide a modest dormer addition to the North side of the property built upon the existing footprint and to provide a modest stoop at the South portion of the property with a suitable handrail for delivery of said supplies, and whereas a granting of [the] variance requested will not confer on the applicant any special privilege that is denied by this ordinance to other lands, buildings or structures in the same zoning district, I move for the granting of the variance. . . ." Based upon this motion the board granted the application for variances. While the motion contains useful findings it does not contain a recognizable reason for the granting of the application. Specifically, the board did not make an express finding as to what, if any, hardship to the applicant existed. In an appeal from the granting of a variance, "[i]f the board fails to give the reasons for its actions, or if its reasons are inadequate, the trial court must search the record to determine whether a basis exists for the action taken." Stankiewicz v. Zoning Board of Appeals, 15 Conn. App. 729, 732, 546 A.2d 919 (1988), affirmed,211 Conn. 76, 556 A.2d 1024 (1989) (per curiam). This now is a settled rule in local land use appeals; DeBeradinis v. Zoning Commission,228 Conn. 187, 199n. 7, ___ A.2d ___ (1994); Sampieri v. Inland Wetlands Agency, 226 Conn. 579, 585, 628 A.2d 1286 (1993); Gagnon v. Inland Wetlands Agency, 213 Conn. 604, 607-609, 569 A.2d 1094
(1990).
Section 118-800 of the Building Zone Regulations of the City of Norwalk deals with "nonconformities". Subpart A of that section, entitled "Purpose and intent", provides in relevant part: "The purpose of this regulation is to permit nonconformities to continue, but to strictly limit the extent to which nonconformities maybe established, continued, expanded or altered. This regulation is intended to bring nonconforming uses into conformity with the regulations as quickly as the fair interests of the parties will permit." Section 118-800C of the regulations addresses the enlargement, extension or alteration of nonconforming uses. Section 118-800D addresses the enlargement or alteration of nonconforming structures. "`It is recognized that the distinction between a nonconforming building or structure and a nonconforming use of land CT Page 1905 is genuine and may be critical.' 1 Anderson, American Law of Zoning (2d Ed.) sec. 6.01, p. 355." Petruzzi v. Zoning Board of Appeals,176 Conn. 479, 481n. 2, 408 A.2d 243 (1979). The zoning regulations of the City of Norwalk historically have afforded to nonconformities "a greater liberality" than that which is provided in the regulations of many other municipalities. Fiorilla v. Zoning Board of Appeals, 144 Conn. 275, 281, 129 A.2d 619 (1957).
With respect to nonconforming structures, section 118-800D(1) provides: "A nonconforming structure shall not be enlarged or altered if the result would be an increase in the extent to which the structure does not conform to these regulations. A nonconforming structure may be enlarged or altered, provided that the enlargement or alteration conforms to these regulations." The second story dormer addition is not within the proscription of the first sentence of this section. That dormer is built within the existing "footprint" of the structure. The parties have assumed that neither the dormer nor the stoop comport with the second sentence of the section since both fail to comply with the required setback lines. This court will "take the case as the issues were framed by the parties." Federico v. Planning Zoning Commission,5 Conn. App. 509, 510n. 2, 500 A.2d 576 (19850. [(1985).]
Notably, section 118-800C provides in part: "No nonconforming use shall be extended or expanded by variance." Cf. General Statutes sec. 8-6 ("the zoning regulations may specify the extent to which uses shall not be permitted by variance in districts in which such uses are not otherwise allowed."). Section 118-800D, which governs the enlargement or alteration of nonconforming structures, contains no such proscription. Since the full panoply of principles of statutory construction apply to the construction of local zoning regulations; Czajkowski v. Planning Zoning Board, 14 Conn. App. 283,288, 540 A.2d 716 (1988); it is presumed that the ommission [omission] of the proscription against variances with respect to the enlargement or alteration of nonconforming structures was by design. Leo Fedus Sons Construction Co. v. Zoning Board of Appeals, 225 Conn. 432,441-444, 623 A.2d 1007 (1993); Koepke v. Zoning Board of Appeals,223 Conn. 171, 177-179, 610 A.2d 1301 (1992).
General Statutes sec. 8-6 provides that a zoning board of appeals may "vary the application of the zoning bylaws, ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety and convenience, welfare and property values, solely with respect to a parcel of land where, owing to conditions especially affecting such CT Page 1906 parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured. . . ." The regulations contain similar language and requirements. See Building Zone Regulations of the City of Norwalk sec. 118-1410A(3). From the language of the statute, our courts have distilled two conditions which must be satisfied before an applicant is entitled to a variance: "`(1) the variance must be shown not to affect substantially the comprehensive zoning plan, and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan.'" Grillo v. Zoning Board of Appeals, 206 Conn. 362,368, 537 A.2d 1030 (1988).
If the applicant had applied to the board before commencing construction he would not have been entitled to a variance. The court has repeatedly reviewed the record and the record fails to reflect any hardship preexisting that construction. The rule is that "a hardship resulting from the peculiar topography or condition of the land or a particular location which makes the property unsuitable for the use permitted in the zone in which it lies may well be such a hardship as is contemplated by the ordinance.' Plumb v. Zoning Board of Appeals, 141 Conn. 595, 601,108 A.2d 899 [1954]." Fiorilla v. Zoning Board of Appeals, supra, 280; see 3 Anderson, American Law of Zoning 3d, sec. 20.56. Here, there is a conforming use contained in a nonconforming structure situated on an irregularly shaped parcel of land. However, there is no showing in the record that any hardship resulted from these circumstances. A viable, ongoing and unimpaired use is present in the preexisting structure. The defendants' claim at the public hearing that they needed the dormer addition for extra space and their lawyer's argument before the board that the only place to erect a second story was over the first story do not amount to legal hardships. Ordinarily, "an economic hardship . . . as well as disappointment in the use of the property is not sufficient for a variance. Krejpcio v. Zoning Board of Appeals, 152 Conn. 657, 662,211 A.2d 687 [1965]." Cowles v. Zoning Board of Appeals, 153 Conn. 116,118, 214 A.2d 361 (1965); see Longo v. Board of Zoning Appeals, 143 Conn. 395, 398, 122 A.2d 784 (1956).
The defendants rely heavily on Stillman v. Zoning Board of Appeals, 25 Conn. App. 631, 596 A.2d 1 (1991), cert. denied,220 Conn. 923, 598 A.2d 365 (1991). In Stillman, the board granted a CT Page 1907 homeowner, Morgan, a variance to build an addition onto her house. The superior court sustained the appeal from that decision, holding, inter alia, "that Morgan did not show a legally cognizable hardship. " Id., 632. The Appellate Court reversed, stating that "a hardship exists on Morgan's property because of the location of the well and septic system, and because of the size of the lot. The placement of these improvements prevents Morgan from building an addition to her house anywhere except on the east side, which is prohibited by the setback requirement. These unique conditions make the setback regulation exceptionally burdensome and support the board's granting of the variance. . . .The hardship claimed by the defendants arises from the configuration of Morgan's lot and the location of the well and the septic system. These considerations are not personal to Morgan and would exist no matter who owned the lot." (Emphasis added; footnote omitted) Id., 636-637. Here, there is only an irregular lot, which does not cause any consequences material here, and a nonconforming building. There is no septic system or other structure; Silitschanu v. Groesbeck, 208 Conn. 312,315-16, 543 A.2d 737 (1988) (septic system held to be a "structure" under zoning regulations); impairing the defendants' ability to add an addition. Stillman does not authorize carte blanche a variance to increase the size of a building which is nonconforming due to side line or set back requirements in zoning regulations. See 1 Anderson, op. cit., sec. 6.55, stating at page 611 that "[t]he requirements for a variance to extend a nonconforming use commonly are the same as those applicable to any variance from the literal application of the zoning ordinance" (but also discussing at page 613 that "[v]ariances to construct additions to nonconforming buildings have fared better than those to construct new buildings.")
 III.
"Ordinarily, at this point we would have reached the end of our inquiry." Lewis v. BT Investment Managers, Inc., 447 U.S. 27,44, 100 S.Ct. 2009, 64 L.Ed.2d 702 (1980). Here, however, the defendants have another arrow in their quiver. Citing Lessner v. Zoning Board of Appeals, 151 Conn. 165, 195 A.2d 437 (1963), the defendants claim that having substantially constructed the additions to their building pursuant to approvals, albeit mistaken approvals, received from the zoning authorities they now would suffer a hardship if they were denied a variance.
In Lessner v. Zoning Board of Appeals, supra, a zoning board of appeals granted Burnham Estates, Inc. (Burnham) a variance to CT Page 1908 construct a one-family house on a lot having a 100-foot frontage in a zone requiring a 120-foot frontage. The property was part of land included in a layout for which a map was recorded in 1925. The lots in the area of Burnham's property had been mapped as being eighty feet wide at the street line. In 1961, Burnham purchased the remaining one-half of one such lot and the remaining sixty feet of an adjacent lot. It then applied for and received a permit to build a one-family house. After Burnham had completed the foundation, the building inspector ordered construction stopped. Id., 167. Burnham then applied for and received a variance. The plaintiff appealed that decision. The trial court dismissed the appeal. The plaintiff then appealed to the Supreme Court.
The Supreme Court affirmed. However, the opinion in Lessner turns more on the fact that the value of Burnham's property would have been practically destroyed without a variance than it does on the fact that Burnham had received a zoning permit before undertaking construction. The court observed: "The board, in granting the variance, made a very thorough and detailed finding of the reasons on which its action was predicated. Briefly summarized, they were: No contiguous land is available to provide a 120-foot frontage. Burnham's land cannot be used for any permitted purpose without a variance. A variance would not impair the integrity of the zoning regulations or be substantially detrimental to the public welfare. A substantial majority of the lots of record in the subdivision have frontages of less than 100 feet. There are still three 80-foot lots in the subdivision on which dwellings can be legally built. . . .The board concluded that the location of the property and the unavailability of additional land for compliance with the regulations constituted special circumstances which did not apply generally to other property in the neighborhood; that the approval of the variance conformed with the comprehensive plan of the zoning regulations . . .and that unusual difficulty or unreasonable hardship would result to Burnham from the strict application of the regulations." Id., 169. The court held that "[t]he situation presented to the board. . . was one in which the application of the regulations to Burnham's property practically destroys its value because Burnham cannot obtain additional frontage to meet the 120-foot requirement. The application of the regulations to Burnham, when considered in the light of the past history of the subdivision and the fact that it is still possible to build on eighty-foot lots if they were mapped of record prior to 1945 [when the zoning regulations were revised], bears such little relationship to the purposes of zoning that as to this property the regulations are in effect confiscatory or arbitrary." Lessner v. Zoning Board of CT Page 1909 Appeals, supra, 170-171.
The defendants' claim, therefore, finds little support Lessner. Indeed no Connecticut case has been cited by the parties or located by the court in which a variance has been granted because substantial construction has been undertaken based on the issuance of a zoning permit. That dearth of authority, however, necessarily need not be fatal to the defendants' claim. "`It is when the colors do not match, when the references in the index fail, when there is no decisive precedent, that the serious business of the judge begins.' Cardozo, The Nature of the Judicial Process, p. 21 (1921)." (Emphasis added.) Canton Motorcar Works, Inc. v. DiMartino, 6 Conn. App. 447, 453-454, 505 A.2d 1255 (1986), cert. denied, 200 Conn. 802, 509 A.2d 516 (1986).
The defendants' claim finds support in the principles of equitable estoppel which have often been applied to the enforcement of zoning regulations. See generally Fuller, Land Use Law and Practice (West 1993), secs. 41.5, 53.1; 4 Rathkopf's The Law of Zoning and Planning (4th Ed. Ziegler) secs. 45.04[c], 50.04[3]; cf. Annotation, "Zoning: Building In Course of Construction As Establishing Valid Nonconforming Use or Vested Right to Complete Construction For Intended Use," 89 ALR3d 1051. "Under our well-established law, any claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. Bozzi v. Bozzi,177 Conn. 232, 242, 413 A.2d 834 (1979); Dupuis v. Submarine Base Credit Union, Inc., 170 Conn. 344, 353, 365 A.2d 1093 (1976); Pet Car Products, Inc. v. Barnett, 150 Conn. 42, 53-54, 184 A.2d 797
(1962)." Zoning Commission v. Lescynski, 188 Conn. 724, 731-32,453 A.2d 1144 (1982). "In municipal zoning cases . . . estoppel may be invoked `(1) only with great caution, (2) only when the resulting violation has been unjustifiably induced by an agent having authority in such matters, and (3) only when special circumstances make it highly inequitable or oppressive to enforce the regulations. Dupuis v. Submarine Base Credit Union, Inc., supra, 354.' Id., 732; see also 8A McQuillin, Municipal Corporations (3d Rev.Ed. 1976) sec. 25.349; 9 McQuillin, supra, sec. 27.56; 3 Rathkopf, Law of Zoning Planning (4th Ed. 1982) sec. 45.05[1][b]." West Hartford v. Rechel, 190 Conn. 114, 121,459 A.2d 1015 (1983); see Gelinas v. West Hartford, 225 Conn. 575, 589-91,626 A.2d 1993). CT Page 1910
"To summarize, in order for estoppel to be asserted against a municipality, municipal board or local officer in connection with the enforcement of land use regulations (1) a person who is authorized to do so, (2) must do or say something calculated or intended to induce another person to believe that certain facts exist and to act on that belief, (3) the other party must change its position in reliance on those facts, thereby incurring some injury, (4) a resulting zoning violation must be unjustifiably induced by the agent who has authority in such matters, and (5) special circumstances exist which make it highly inequitable or oppressive to enforce the land use regulations." Burns v. Board of Zoning Appeals, Superior Court, Judicial District of Fairfield, No. 298475, page 26 (1993).
With respect to the first element for estoppel, it is clear that persons who were authorized to do so approved of the additions proposed by the defendants. The record in this case and a "partial stipulation of facts" signed by the plaintiffs and the defendants in a related case involving the same parties, bearing docket number CV-93-0303192S, of which the court takes judicial notice, State v. Lenihan, 151 Conn. 552, 554, 200 A.2d 476 (1964); Guerriero v. Galasso, 144 Conn. 600, 605, 136 A.2d 497 (1957); reflects that on June 19, 1990, Martin Maier, then zoning inspector of the City of Norwalk signed a document stating that the plan for 89 Rowayton Avenue had been reviewed and complied with all applicable zoning regulations. On July 17, 1991, the Plan Review Committee of the zoning commission recommended approval of the coastal area management application for the site. See General Statutes sec. 22a-90
et seq. That review included and incorporated the zoning inspector's approval. That same day, the zoning commission approved the plans. On July 31, 1992, an application for zoning approval was approved by James Bradley, then zoning inspector. Under section 118-1420(5) of the Building Zone Regulations of the City of Norwalk, the zoning inspector is authorized to "[i]ssue approvals for all proposed building projects. . . ." The zoning commission is authorized to give coastal site plan approval. General Statutes sec. 22a-109, Building Zone Regulations of the City of Norwalk sec. 118-1110.
Second, the zoning inspector's acts were calculated "to induce [the defendants] to believe that certain facts existed and to act on that belief. . . ." Zoning Commission v. Lescynski, supra, 731. Notably, `[t]he notion that an equitable estoppel requires proof of actual intention to mislead or a deceitful purpose has been CT Page 1911 expressly rejected in this state. Goldberg v. Parker, 87 Conn. 99,106-107, 87 A. 555 (1913); Canfield, Trustee v. Gregory, 66 Conn. 9,16, 33 A. 536 (1895). `Neither actual fraud nor bad faith is generally considered an essential element.' 28 Am.Jur.2d, Estoppel and Waiver, sec. 43; see 5 Williston, Contracts (3d Ed. Jaeger) sec. 692, p. 317. To insist upon proof that the [zoning inspector] deliberately intended to induce a false belief on the part of the defendants would be equivalent to a requirement of fraud." Steinegger v. Fields, 37 Conn. Sup. 534, 538, 425 A.2d 962
(App. Sess. 1988)(Daly, J., with Shea with Bieluch, Js., concurring). Thus, "[i]nducement for the purpose of estoppel requires a mental state which is a general intent rather than a special intent to mislead. It is sufficient if actions are taken with an awareness that they would be relied upon; it is not necessary to prove that the actions were intended knowingly to mislead the party claiming estoppel." West Hartford v. Rechel, supra, 124.
As for the third element, the parties' partial stipulation of facts states that in August or September of 1992, construction of the project at 89 Rowayton Avenue began. The record reflects that the construction had been substantially completed by or before the hearing on the defendants' application for a variance on March 4, 1993. The record does not specifically reflect whether any construction had proceeded after January 1993 when the defendants were served with a cease and desist order. When that order issued, however, several months had elapsed from the time construction of the additions had commenced. The Board was not required to find that construction had ensued after the issuance of the cease and desist order, in the dead of winter. In a memo to the board the zoning inspector conceded that the defendants had proceeded in the belief that their project complied with the requirements in the zoning regulations. Thus, the defendants changed their position in reliance on the approvals given them by the zoning inspector and the zoning commission. Cf. Newfield Building Co. v. Mohican Co.,105 Conn. 488, 496-500, 136 A. 78 (1927).
The fourth element of estoppel against a zoning officer or board is that "a resulting zoning violation must be unjustifiably induced by the agent who has authority in such matters. . . ." Zoning Commission v. Lescynski, supra, 732. In Dupuis v. Submarine Base Credit Union, Inc., supra, "[t]he stipulated facts before the trial court reveal[ed] that prior to commencing with construction of the . . . credit union building, the project manager for the construction company involved telephoned the Groton building inspector's office and was told that no building permit was required for the project. CT Page 1912 On two other occasions, the construction superintendent of the project called the building inspector's office, once to inquire about a building permit and once to request the inspector to inspect the forms for the foundation footings. Both times the superintendent was told that the credit union project was on navy property and was not within the town's jurisdiction. The plaintiff did not serve a cease-work order upon the defendants until the project was approximately 30 percent complete." Id., 355. The Supreme Court held that "[a]lthough these facts would support a conclusion by the trial court that the zoning violation had been unjustifiably induced, they are insufficient to show by whom this reliance has been unjustifiable induced. The stipulation does not reveal whether the person who spoke with the project manager and superintendent was an official with authority such as the plaintiff or his assistant or whether that person was merely a clerk or part-time summer held. The parties also stipulated that there was no testimony that the plaintiff had any knowledge that the credit union building was being constructed for a private corporation prior to the date on which he served the cease-work order." (Emphasis in original.) Ibid. For these reasons, the court held that a finding of estoppel was not supported by the record. In this case, on the other hand, there is no such deficiency. Since two zoning inspectors explicitly approved this construction, under the reasoning of Dupuis, "the zoning violation ha[s] been unjustifiably induced" by the agent having authority in such matters.
The final element for the assertion of estoppel against a zoning officer or board is that "special circumstances make it highly inequitable or oppressive to enforce the regulations." Zoning Commission v. Lescynski, supra, 732. In West Hartford v. Rechel, supra, the court held that consideration of this criteria required weighing, inter alia, "the town's conduct, the extent of the defendants' reliance and the condition of the neighborhood. . . ." Id., 125. Here, the nature of the town's conduct is contained in the stipulation, discussed supra. Also, the board could have found that the defendants' reliance, prior to issuance of the cease and desist order, was substantial. Finally, the board recognized that the variances requested were in harmony with the condition of the neighborhood when it found that the variances requested were modest and that "a granting of [the] variance[s] requested will not confer on the applicant any special privilege that is denied by this ordinance to other lands, buildings or structures in the same zoning district. . . ." Local land use boards comprised of laypersons cannot be expected to express themselves with the technical precision of seasoned attorneys. DeBeradinis v. Zoning Commission, CT Page 1913 supra, 199 n. 7; Samperi v. Inland Wetlands Agency, supra, 596. However, the board's expression is fairly referable to the fact that the dormer addition would only raise the height of the defendants' building to one and one-half stories or twenty-five feet in a zone in which two and one-half stories and thirty-five feet are permitted heights. See Building Zone Regulations of the City of Norwalk sec. 118-530C(1) and accompanying "Schedule Limiting Height and Bulk of Buildings. . . Part 1."
A zoning board of appeals "has wide discretion to grant variances." Burlington v. Jencik, 168 Conn. 506, 509, 362 A.2d 1338
(1975). Employing the elements of estoppel as criteria for reviewing the board's exercise of its discretion compels the conclusion that the board did not abuse its discretion in granting the requested variances. This is not to say that such a decision by a board can only be upheld where the record provides support for every element of equitable estoppel that a court would be required to address where that defense is raised in a civil action by a zoning officer to enforce of the zoning regulations. Indeed, "[s]ince a zoning board of appeals lacks [general] equity jurisdiction, it is incompetent to decide an issue such as equitable estoppel." Burns v. Board of Zoning Appeals, supra, However, the elements of estoppel are useful criteria by which to judge the board's exercise of its broad discretion in the rare case where it is appropriate to assert that the actions of a municipal officer contributed to a hardship which warrants the issuance of a variance.
This is just such a rare case. First, the record reflects that the zoning inspector conceded the factual underpinnings to an estoppel. Specifically, the inspector conceded that permits for the additions issued and that "[t]he front setback encroachment by the two additions was erroneously overlooked again. . . .[The] [a]pplicant should have been advised from the 1991 CAM [coastal area management] and zoning compliance review of these encroachments. They were missed again in July, 1992. Applicant has proceeded in [the] belief that his project complied with zoning requirement, and is now at detriment." Second, while the record reflects that the construction undertaken has been substantial, it does not appear that it was completed. Third, although the zoning inspector issued a cease and desist order in January 1993, over one year ago, no action to enforce that cease and desist order pursuant to General Statutes sec. 8-12 has been brought by the zoning inspector. While it is said that "estoppel operates always as a shield, never a sword"; 28 Am.Jur.2d, Estoppel and Waiver, sec. 33; CT Page 1914 the defendants are left in a legal limbo. With only the possibility that an enforcement action may be brought against them, at the discretion of the zoning inspector, at some unspecified time in the future, and with the outcome of such an action uncertain; see, e.g., Crabtree v. Coyle, 19 Conn. App. 208, 561 A.2d 455 (1989); West Hartford v. Rechel, 12 Conn. Law Trib. 11 (1986) (on remand from the Supreme Court, town estopped from enforcing zoning regulations); the defendants are unable to determine whether to dismantle the construction they have undertaken or to complete it. This is sheer economic waste. There is a public "policy of avoiding unnecessary economic waste." American Bank of Connecticut v. Eagle Construction Co., 10 Conn. App. 251, 255, 522 A.2d 835 (1987).
Moreover, permitting a property owner to seek a variance in a case such as this allows a reviewing court the benefit of the insight and judgment of the zoning board of appeals in an area of law which the legislature has committed to the primary jurisdiction of land use boards. Cf. Suffield Heights Corporation v. Town Planning Commission, 144 Conn. 425, 427-28, 133 A.2d 612 (1957). "[Z]oning questions are matters of local concern which are usually best determined by the zoning authority. . . ." Larsen v. Zoning Commission, 153 Conn. 483, 489, 217 A.2d 715 (1966). When estoppel is asserted defensively in an enforcement action, the adversarial posture of the proceeding , indeed the nature of "litigation" itself, tends to propel the parties into rigid adversarial, opposing positions. See Hickman v. Taylor, 329 U.S. 495, 516,67 S.Ct. 385, 91 L.Ed. 451 (1947) ("a common trial is and always should be an adversary proceeding.")
One commentator, citing Lessner v. Zoning Board of Appeals, supra, has opined that where an applicant relies in good faith upon statements by municipal officers, a resulting hardship is not self-created. 3 Anderson, op. cit., sec. 20.58, p. 560 ("Hardship caused by knowing reliance upon an illegal permit is self-created and will not support an area variance, but the rule need not be applied where the applicant relied in good faith upon statements by municipal officials.") A treatise, however, cites three authorities for the proposition that such a hardship indeed is self-created. 83 Am.Jur.2d, Zoning Planning, sec. 899, citing Hughes v. New Orleans Public Service, Inc., 221 So.2d 331 (La.App. 1969); Sherman v. Gustafson, 28 App. Div. 2d 1082, 285 N.Y.S.2d 255 1967), affirmed,22 N.Y.2d 793, 292 N.Y.S.2d 896, 239 N.E.2d 641 (1968); State ex rel. The Markdale Corp. v. Board of Appeals, 27 Wis.2d 154,133 N.W.2d 795 (1965). CT Page 1915
Of those cases, only Sherman v. Gustafson, supra, can be said to stand for the proposition that substantial building and expenditures made pursuant to a permit which issued notwithstanding noncompliance with an applicable zoning regulation does not warrant a variance. In that case, "[a]fter petitioners, under an illegally issued building permit, had constructed a supermarket and retail stores building on their property which failed to comply with the parking requirements of the zoning ordinance, the Zoning Board of Appeals revoked the permit and ordered petitioners to remove the retail stores part of the structure. Petitioners then obtained additional land for parking and applied for an area variance to permit them to use their entire building, although there was still insufficient land to comply with the ordinance. The Zoning Board in denying the application found that there was a significant shortage of parking areas and that any hardship suffered by petitioners was self created." Id., 256. These are the only facts disclosed in the opinion. The Appellate Division held that "the Zoning Board was justified in denying the variance upon the ground that the practical difficulty was self created. . . ." Ibid. Three factors distinguish that case from this. First, in Sherman the board exercised its discretion to deny they application for a variance. Here, the board exercised its discretion otherwise, and the standard of review requires that this court afford the board's discretionary decision a measure of deference. Whittaker v. Zoning Board of Appeals, 179 Conn. 650, 654, 427 A.2d 1346 (1980); Larsen v. Zoning Commission, supra; Rocchi v. Zoning Board of Appeals,157 Conn. 106, 110, 248 A.2d 922 (1968). Second, in Sherman the board found "that there was a significant shortage of parking areas. . . ." Here, by contrast, the board characterized the variances sought as "modest". Third, in New York, unlike in Connecticut, equitable estoppel, at least until recently, was not even available as a defense to the enforcement of zoning regulations. See Shumaker v. Town of Cortlandt, 143 App. Div. 2d 999, 533 N.Y.S.2d 886, 887
(1988)("even though the town issued the necessary building permits, estoppel is not available to prevent enforcement of zoning laws.").
In State ex rel. The Markdale Corp. v. Board of Appeals, supra, the facts would not have supported an estoppel in any context since there the construction under the mistakenly issued permit proceeded during the appeal from the issuance of that permit. Id., 133 N.W.2d at 797-798, citing Misuk v. Zoning Board of Appeals, 138 Conn. 477, 86 A.2d 180 (1952). Also, in Wisconsin, "[t]he rule of law . . . is clear that no . . . estoppel may arise against a municipality for the unauthorized acts of its officers" in issuing a building permit. Snyder v. Waukesha County Zoning CT Page 1916 Board of Adjustment, 74 Wis.2d 468, 247 N.W.2d 98, 103 (1976).
Nassau Realty Co. v. City of New Orleans, supra, is a fact-intensive opinion in which the plaintiff had spent only about $1,100 in the construction of a building when, fifteen days after a building permit had been received, a stop work order was issued. Id., 328-329. Certain observations in that case, however, are relevant. Said the court: "If plaintiff has sustained a loss and has been subjected to undue hardship through no fault of its own but as a result of the Director of the department of Safety and permits having erroneously issued a permit upon which it relied, it may have a just grievance against that Department. . . .Whatever remedy it might have, however, does not lie in any action which will merely pass the hardship on to its neighbors whose property would be reduced in value by the granting of the variance." Id., 330-331. In this case, on the other hand, such consequences will not befall any of the neighbors as a result of the granting of these variances, despite their claims to the contrary. The board found that the variances requested were "modest" and impliedly found that the variances would not affect substantially the comprehensive zoning plan. Moreover, if any affect on area properties, no matter how remote or de minimis, could defeat a variance application, hardly ever could a variance be granted.
In other contexts, our case law recognizes that acts of the government may give rise to a hardship. Cf. Smith v. Zoning Board of Appeals, 174 Conn. 323, 328, 387 A.2d 542 (1978). So too our Supreme Court has stated in dicta that where "the hardship arises as a result of a voluntary act by one other than the one whom the variance will benefit, the board may, in the sound exercise of its discretion, grant the variance. . . . But the board is not required to extricate an applicant from an unusual hardship, at least if it does not arise out of the application of the zoning regulations themselves." Belknap v. Zoning Board of Appeals, 155 Conn. 380,384-85, 232 A.2d 922 (1967).
Here, the board has exercised its "wide discretion"; Burlington v. Jencik, supra; to grant the requested variances. Those variances are based on a hardship; that hardship is the defendants' having undertaken substantial construction of improvements in good faith and the obvious hardship which would result if they now were required to demolish those improvements or to abstain from completing them because of uncertainty as to whether an enforcement action will be brought and the outcome of such litigation.[1] More importantly, that hardship arises out of CT Page 1917 the voluntary act of the zoning inspector in issuing approvals for that work, approvals on which the defendants could and did reasonably rely. Kimberly-Clark Corporation v. Dubno, 204 Conn. 137,149-151, 527 A.2d 679 (1987).
"Without some latitude in its operation, the machinery of government can become oppressive. For that reason, a zoning board of appeals is created to vary, within prescribed limits and consonant with the exercise of a legal discretion, the strict letter of the zoning regulations in the case of a claim which has real merit and can be granted consistently with the spirit and purposes of the general plan. St. Patrick's Church Corporation v. Daniels, 113 Conn. 132, 139, 154 A. 343 [1932]. Thus, a board of appeals can keep the law running on at, even keel. Ibid." Lessner v. Zoning Board of Appeals, supra, 170.
In an appeal from the granting of a variance, the function of this court is to determine whether the board acted illegally, arbitrarily or in abuse of its discretion. Bonaldo v. Board of Zoning Appeals, 146 Conn. 595, 597-98, 153 A.2d 429 (1959); Paul v. Board of Zoning Appeals, 142 Conn. 40, 43, 110 A.2d 619 (1955); Berkman v. Board of Appeals, 135 Conn. 393, 398, 64 A.2d 875
(1949). Upon review of the whole record, the court cannot conclude that the board so acted.
The appeal is dismissed.[2]
Bruce L. Levin Judge of the Superior Court